1
2
3
4
5
6
7
8

UNITED STATES  DISTRICT COURT

9

Northern District of California

10

San Francisco Division

11

STATE NATIONAL INSURANCE
COMPANY,

12

Plaintiff,

13

v.

14

PRADEEP KANTILAL KHATRI, et al.,

15

Defendants.

16

_____/

No. C 13-00433 LB

**ORDER (1) GRANTING
DEFENDANTS' MOTION TO
DISMISS AND (2) DENYING AS
MOOT DEFENDANTS' MOTION TO
STRIKE**

[Re: ECF Nos. 9, 10]

17

**INTRODUCTION**

18        Plaintiff State National Insurance Company ("State National") filed this action against Pradeep

19   Kantilal Khatri and VNS Hotels, Inc. ("VNS") (collectively, "Defendants") seeking reimbursement

20   of defense fees and costs incurred and indemnity of payments made in relation to a state court action

21   in which State National defended Defendants and ultimately settled with the state court plaintiffs.

22   *See generally* Complaint, ECF No. 1.[1]  Defendants move to dismiss State National's complaint and

23   to strike certain allegations in it.  Motion to Dismiss, ECF Nos. 9 & 9-1; Motion to Strike, ECF Nos.

24   10 & 10-1.  Pursuant to Civil Local Rule 7-1(b), the court finds these matters suitable for

25   determination without oral arguments and vacates the May 2, 2013 hearing.  Upon consideration of

26   the applicable authority, the parties' arguments, and the record in this case, the court **GRANTS**

27

28        [1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-
generated page numbers at the top of the document.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Defendants' motion to dismiss and **DENIES AS MOOT** Defendants' motion to strike.

2  <center>**STATEMENT**</center>

3      State National provided coverage to Defendants under a Commercial General Liability Policy

4  (the "Policy") for the period August 19, 2009 to August 19, 2010 (the "Coverage Period").

5  Complaint, ECF No. 1 ¶ 12; *id.*, Exh. A (the Policy), ECF No. 1 at 12-116.  The Policy names VNS

6  as the "First Insured" and Mr. Khatri as an "Additional Insured," *id.*, Exh. A, ECF No. 1 at 13, 76,

7  and it contains liability coverage for "Advertising Injury," "Bodily Injury," "Personal Injury," and

8  "Property Damage."  *Id.*, Exh. A, ECF No. 1 at 79, 81-82.  "Advertising Injury" includes "injury

9  arising out of . . . [o]ral or written publication of material that slanders or libels a person or

10  organization or disparages a person's or organization's goods, products or services."  *Id.*, Exh. A,

11  ECF No. 1 at 79.  "Bodily Injury" "means bodily injury, sickness or disease sustained by a person,

12  including death resulting from any of these at any time."  *Id.*, Exh. A, ECF No. 1 at 79.  "Personal

13  Injury" includes "injury, other than 'bodily injury,' arising out of . . . [o]ral or written publication of

14  material that slanders or libels a person or organization or disparages a person's or organization's

15  goods, products or services."  *Id.*, Exh. A, ECF No. 1 at 81.  And "Property Damage" means

16  "[p]hysical injury to tangible property, including resulting loss of use of that property," as well as

17  "[l]oss of use of tangible property that is not physically injured."  *Id.*, Exh. A, ECF No. 1 at 82.  The

18  Policy also states that it "applies to 'bodily injury' and 'property damage' only if: (1) [t]he 'bodily

19  damage' or 'property damage' is caused by an 'occurrence' . . . ."  *Id.*, Exh. A, ECF No. 1 at 71.  An

20  "occurrence," in turn, is defined as "an accident, including continuous or repeated exposure to

21  substantially the same general harmful conditions."  *Id.*, Exh. A, ECF No. 1 at 81.  The Policy also

22  includes an "Employment-Related Practices Exclusion" that excludes from coverage an employee's

23  "'personal injury' arising out of . . . coercion . . . [or] defamation."  *Id.*, Exh. A, ECF No. 1 at 89.

24      With the Policy's relevant terms stated, the court now turns to the alleged events.  On June 23,

25  2011, Veena and Arjun Mackrani (collectively, the "Mackranis") filed a complaint against

26  Defendants in San Mateo County Superior Court arising out of conduct that allegedly occurred in

27  part within the Coverage Period (the "Mackrani Action").  *Id.* ¶ 13; *see id.*, Exh. B (the "Mackrani

28  Complaint"), ECF No. 1 at 117-29.  They alleged claims for: (1) Non-payment of Wages, (2)

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Waiting Time Penalties, (3) Interference with Employment by Misrepresentation, (4) Defamation by

2  Slander Per Se, (5) Unfair Business Practices, (6) Assault, (7) Battery, (8) False Imprisonment, (9)

3  Intentional Infliction of Emotional Distress, and (10) Negligent Infliction of Emotional Distress.  Id.,

4  Exh. B ¶¶ 4-69.

5       The Mackranis alleged that Veena Mackrani and Arjun Mackrani were Defendants' employees

6  until March 11, 2010 and March 30, 2010, respectively.  Id., Exh. B ¶ 5, 7, 10, 12.  Relevant to this

7  action are the Mackranis' allegations regarding their defamation, assault, battery, false

8  imprisonment, and negligent infliction of emotional distress claims.  For their defamation claim,

9  they alleged that on April 22, 2010, Mr. Khatri "spoke the following words of or concerning" Arjun

10  Mackrani: he "had stolen money from" Defendants, "was lazy with respect to his employment,"

11  "slept during his work hours," and "had made false claims to the California Department of Labor

12  Standards Enforcement." Id., Exh. B, ECF No. 1 at 122-23.  For their assault claim, they alleged

13  that on March 11, 2010, Mr. Khatri placed Veena Mackrani "in fear of harmful or offensive contact,

14  by using threatening and abusive language, menacing her physically, and threatening her with attack

15  with a foreign object." Id., Exh. B, ECF No. 1 at 125.  For their battery claim, they alleged, among

16  other things, that on March 11, 2010, Mr. Khatri, "from a short distance, threw a hard plastic

17  brochure holder at [Veena Mackrani], causing offensive contract with her person." Id., Exh. B, ECF

18  No. 1 at 125.  They also alleged that as a proximate result of the assault and battery, Veena

19  Mackrani "was hurt and injured in her health, strength, and activity, sustaining injury to her nervous

20  system and person, all of which has caused, and continues to cause[,] her great mental, physical, and

21  nervous pain and suffering." Id., Exh. B, ECF No. 1 at 126.  For their false imprisonment claim,

22  they alleged that on March 11, 2010, Mr. Khatri "seized [Veena Mackrani] and forcibly, against her

23  will, without her consent, and over her protest, restrained her by force, threats of physical violence,

24  deceit and misrepresentation, and physical attack," and that, "[a]s a proximate result of the acts of

25  [Mr. Khatri], [Veena Mackrani] was injured in her health, strength, and activity." Id., Exh. B, ECF

26  No. 1 at 127.  Finally, for their negligent infliction of emotional distress claim, they alleged that they

27  "suffered humiliation, mental anguish, and emotional and physical distress." Id., Exh. B, ECF No. 1

28  at 127-28.

On July 19, 2011, Defendants' counsel tendered the defense and indemnification of the Mackrani Action to State National and demanded that their personally-retained counsel represent them pursuant to Civil Code § 2860. *Id.* ¶ 14. On August 24, 2011, State National agreed to defend the Mackrani Action under a reservation of rights to seek reimbursement of attorney's fees, costs, and expenses and to seek indemnification "of claims that are not potentially covered under the policy." *Id.* ¶ 15. State National also agreed to Defendants' designation of counsel under Civil Code § 2860. *Id.* Pursuant to Civil Code § 1860, State National asked Defendants and their counsel to provide reports to it "advising it of information learned during discovery and investigation in the Mackrani [Action], which is necessary to permit State National to evaluate [Defendants'] liability and damages exposure." *Id.* ¶ 16.

Despite this request, Defendants and their counsel "refused to communicate with" State National or "provide invoices for attorneys' fees and costs" to it until August 2012. *Id.* ¶ 17. By that time, "the parties had significantly litigated the Mackrani [Action], clarified [the Mackranis'] claims, and developed the factual bases of each of [the Mackranis'] claims, all of which State National knew nothing about." *Id.* "Defendants," State National alleges, "breached the cooperation clause in State National's policy by refusing to disclose information, pleadings, discovery, and opinions about [their] exposure to the Mackranis' claims." *Id.*

Also in August 2012, Defendants notified State National of an upcoming mediation in the Mackrani Action. *Id.* ¶ 18. Defendants "refused to provide State National with copies of the parties' mediation briefs." Id. State National participated in the mediation nevertheless. *Id.* At the mediation, Defendants "demanded that [State National] fully indemnify in full and final settlement of the [Mackrani Action]." *Id.* The mediation resulted in a Mediator's Proposal of $125,000, which the Mackranis accepted. *Id.* Defendants, however, "refused to contribute to the Mediator's Proposal for claims not covered under the policy." *Id.*

Defendants "agreed the Mediator's Proposal was [] reasonable," but demanded that State National fund the entire proposed settlement and "threatened to sue State National for tortious breach of [the Policy] if [it] did not pay the entire Mediator's Proposal in full and final settlement of the claims [D]efendants admitted were not covered by [the Policy]." *Id.* ¶ 19. On September 28,

UNITED STATES DISTRICT COURT
For the Northern District of California

2012, "hours before the Mediator's Proposal was to expire, and in the face of [D]efendants' acceptance of[,] but refusal to contribute to[,] the Mediator's Proposal," State National agreed to pay the entire $125,000 settlement amount "under a strict reservation of rights to seek reimbursement from [D]efendants for moneys it paid to defend a claim not potentially covered under the [P]olicy and to indemnify claims not actually covered under the [P]olicy." *Id.* ¶ 20. The Mackranis' counsel and Defendants' counsel mutually drafted a settlement agreement, but only the Mackranis signed it. I*d.* ¶ 21.

On October 22, 2012, State National, pursuant to Defendants' demand, paid $125,000 to the Mackranis "under the reservation of rights to seek reimbursement." *Id.* ¶ 23. By November 17, 2012, "the Mackranis had not received the settlement agreement with [D]efendants' signatures and notified State National and [D]efendants that they would void the settlement" if Defendants did not sign it by December 4, 2012. *Id.* ¶ 24. On November 30, 2012, Defendants "notified State National that they would not sign the settlement agreement because State National was reserving its right to seek reimbursement." *Id.* ¶ 25. On December 3, 2012, State National "notified [D]efendants that they should assume their own defense if they did not want State National to settle the [Mackrani Action] under [its] express right to reimbursement." *Id.* ¶ 26. Defendants did not assume their own defense and instead "repudiated" the $125,000 settlement. *Id.*

The Mackranis thereafter demanded $175,000 to settle. *Id.* On December 6, 2012, "after negotiations, State National settled the [Mackrani Action] for $137,500 in full and final settlement of the [Mackrani Action] under a strict reservation of rights to seek reimbursement from [D]efendants." *Id.* ¶ 27. State National paid $12,500 to the Mackranis, which, added to the $125,000 it already paid to them, constituted the entire $137,500 settlement amount. *Id.* ¶ 28. The Mackranis and State National allocated the $137,500 settlement payment as follows: $66,000 for attorney's fees; $22,000 for compensation for unpaid wages; $42,900 for emotional distress damages for assault and loss of consortium; and $6,600 for civil penalties. *Id.* ¶ 29.

State National then filed the instant action on January 30, 2013. *See generally id.* It brings claims for: (1) reimbursement of expenses incurred in defense of the Mackrani Action because there were no potentially covered claims under the Policy; (2) reimbursement of allocated expenses

incurred in defense of the Mackrani Action because not all claims were potentially covered under the Policy; (3) reimbursement of expenses incurred in settlement of the Mackrani Action because State National indemnified Defendants for claims not covered under the Policy, and (4) reimbursement of allocated expenses incurred in settlement of the Mackrani Action because State National indemnified Defendants for claims potentially not covered under the Policy.  *See id.* ¶¶ 31-52.

Defendants now move to dismiss State National's complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted and to strike certain of State National's allegations under Rule 12(f).  Motion to Dismiss, ECF Nos. 9 & 9-1; Motion to Strike, ECF Nos. 10 & 10-1. State National opposes both motions.  Opposition, ECF No. 12.

<div align="center">

**ANALYSIS**

</div>

## I. DEFENDANTS' MOTION TO DISMISS

### A.  Legal Standard

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 557.).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff.  *See id.* at 550; *see also Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir.

1    2007).

2        If the court dismisses the complaint, it should grant leave to amend even if no request to amend

3    is made "unless it determines that the pleading could not possibly be cured by the allegation of other

4    facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc.*

5    *v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).  But when a party

6    repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend.  *See*

7    *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where

8    district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim

9    with leave to amend).

10   **B. Application**

11       *1.  State National's First Claim*

12       As noted above, State National's first claim is for reimbursement of all of the expenses it

13   incurred in defending the Mackrani Action because none of the claims were potentially covered

14   under the Policy.  *See* Complaint, ECF No. 1 ¶¶ 31-35.  Defendants argue that State National's claim

15   fails because at least one of the claims were potentially covered under the Policy.  Motion to

16   Dismiss, ECF No. 9-1 at 12.

17       In *Scottsdale Insurance Company v. MV Transportation*, the California Supreme Court

18   "summarize[d] familiar principals pertaining to an insurer's duty of defense."

19           An insurer must defend its insured against claims that create a potential for
         indemnity under the policy. (*Montrose Chemical Corp. v. Superior Court* (1993) 6
20       Cal. 4th 287, 295, 24 Cal. Rptr. 2d 467, 861 P.2d 1153 (*Montrose* ); *Gray v. Zurich
         Insurance Co.* (1966) 65 Cal. 2d 263, 275, 54 Cal. Rptr. 104, 419 P.2d 168 (*Gray* ).)
21       The duty to defend is broader than the duty to indemnify, and it may apply even in an
         action where no damages are ultimately awarded.  *(Horace Mann Ins. Co. v. Barbara
22       B.* (1993) 4 Cal. 4th 1076, 1081, 17 Cal. Rptr.2d 210, 846 P.2d 792.)

23           Determination of the duty to defend depends, in the first instance, on a
         comparison between the allegations of the complaint and the terms of the policy.
24       (*Montrose, supra,* 6 Cal. 4th 287, 295, 24 Cal. Rptr.2d 467, 861 P.2d 1153.)  But the
         duty also exists where extrinsic facts known to the insurer suggest that the claim may
25       be covered.  (*Ibid.*)  Moreover, that the precise causes of action pled by the
         third-party complaint may fall outside policy coverage does not excuse the duty to
26       defend where, under the facts alleged, reasonably inferable, or otherwise known, the
         complaint could fairly be amended to state a covered liability.  (*Gray, supra,* 65 Cal.
27       2d 263, 275-276, 54 Cal. Rptr. 104, 419 P.2d 168; *CNA Casualty of California v.
         Seaboard Surety Co.* (1986) 176 Cal. App. 3d 598, 610-611, 222 Cal. Rptr. 276.)

28           The defense duty arises upon tender of a potentially covered claim and lasts until

UNITED STATES DISTRICT COURT
For the Northern District of California

the underlying lawsuit is concluded, or until it has been shown that there is no potential for coverage. (*Montrose, supra,* 6 Cal. 4th 287, 295, 24 Cal. Rptr.2d 467, 861 P.2d 1153.) When the duty, having arisen, is extinguished by a showing that no claim can in fact be covered, "it is extinguished only prospectively and not retroactively." (*Buss v. Superior Court* (1997) 16 Cal. 4th 35, 46, 65 Cal. Rptr.2d 366, 939 P.2d 766 (*Buss*); *see also Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal. 4th 38, 58, 70 Cal. Rptr. 2d 118, 948 P.2d 909 (*Aerojet-General*).)

On the other hand, "in an action wherein none of the claims is even potentially covered because it does not even possibly embrace any triggering harm of the specified sort within the policy period caused by an included occurrence, the insurer does not have a duty to defend. [Citation.] 'This freedom is implied in the policy's language. It rests on the fact that the insurer has not been paid premiums by the insured for [such] a defense. . . . [T]he duty to defend is contractual. "The insurer has not contracted to pay defense costs" for claims that are not even potentially covered.' [Citation.]" (*Aerojet-General, supra,* 17 Cal. 4th 38, 59, 70 Cal. Rptr. 2d 118, 948 P.2d 909, quoting *Buss, supra,* 16 Cal. 4th 35, 47, 65 Cal. Rptr.2d 366, 939 P.2d 766.)

From these premises, the following may be stated: If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage. On the other hand, if, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance.

*Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654-55 (2005). Thus, "[w]hen an insurer provides an insured a defense under a reservation of rights, and it is later determined that the claims were not covered and the duty to defend never arose, the insurer is entitled to reimbursement for costs advanced." *Progressive West Inc. Co. v. Dallo*, No. No. 07CV1003 IEG (BLM), 2007 WL 3225439, at *5 (S.D. Cal. Oct. 30, 2007) (citing *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal. 4th 643, 656 (2005)).

In their motion, Defendants argue that at least one of the claims brought by the Mackranis was potentially covered under the Policy. Motion to Dismiss, ECF No. 9-1 at 11-12. Specifically, Defendants argue that the Mackranis' claims for defamation, assault, battery, false imprisonment, and negligent infliction of emotional distress, as they were alleged in the Mackranis' complaint, were potentially covered under the Policy. *Id.*; Reply, ECF No. 13 at 6-10. State National responds by making three arguments: (1) the Mackranis' assault, battery, and negligent infliction of emotional distress claims were not potentially covered because the Mackranis did not allege that they suffered physical harm, and thus "bodily injury," as defined in the Policy; (2) even if they had alleged

UNITED STATES DISTRICT COURT
For the Northern District of California

1  "bodily injury," their assault, battery, and negligent infliction of emotional distress claims were not

2  potentially covered because they were not caused by an "accident"; and (3) the Mackranis'

3  defamation and false imprisonment claims were not potentially covered because the Policy's

4  Employment-Related Practices Exclusion applied to these claims.  Opposition, ECF No. 12 at 8-10.

5       The court agrees with Defendants.  First, despite State National's attempt to show otherwise, the

6  Mackranis did, in fact, allege that Veena Mackrani suffered physical harm with respect to their

7  assault, battery, and negligence infliction of emotional distress claims.  *See* Complaint, Exh. B ¶¶ 43

8  ("[Mr. Khatri] then proceeded to batter [Veena Mackrani] as more fully alleged below."), 47 ("[Mr.

9  Khatri], from a short distance, threw a hard plastic brochure holder at [Veena Mackrani], cause

10  offensive touching with her person . . . ."), 50 (As a result of the acts alleged in support of their

11  assault and battery claims, "[Veena Mackrani] was hurt and injured in her health, strength, and

12  activity, sustaining injury to her nervous system and person, all of which has caused, and continues

13  to cause[,] her great mental, physical, and nervous pain and suffering."), 68 (As a result of the acts

14  alleged in support of their negligent infliction of emotional distress claim, "[the Mackranis] have

15  suffered humiliation, mental anguish, and emotional and physical distress.").

16       Second, the Mackranis' allegations in support of their assault, battery, and negligent infliction of

17  emotional distress claims left room for interpretation concerning Mr. Khatri's intent.  In other words,

18  it was not clear from the Mackranis' allegations whether the physical harm they alleged was caused

19  by "accident" or not.  As Defendants note, whether an "occurrence" was an "accident" is not a

20  simple answer; in essence, it turns on what deliberate act or acts an individual did and whether any

21  additional, unexpected, independent, and unforeseen happening occurred that produced the damage.

22  *See Fire Ins. Exchange v. Superior Court*, 181 Cal. App. 4th 388, 392(Cal. App. 4th Dist. 2010).

23  Indeed, as the California Court of Appeal, Fourth District, has explained:

24       "Under California law, the word 'accident' in the coverage clause of a liability
        policy refers to the conduct of the insured for which liability is sought to be imposed
25       on the insured."  [Citation.]  Our courts have repeatedly held that "the term 'accident'
        does not apply to an act's consequences, but instead applies to the act itself."
26       [Citations.]

27       These cases make clear that "[a]n accident does not occur when the insured
        performs a deliberate act unless some additional, unexpected, independent, and
28       unforeseen happening occurs that produces the damage."  (*Fire Ins. Exchange*, *supra*,
        181 Cal. App. 4th at p. 392, 104 Cal. Rptr. 3d 534; *see also Delgado*, *supra*, 47 Cal.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   4th at p. 315, 97 Cal. Rptr. 3d 298, 211 P.3d 1083; *MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins.* (2010) 187 Cal. App. 4th 766, 781, 115 Cal. Rptr. 3d 27; *Merced Mutual Ins. Co. v. Mendez* (1989) 213 Cal. App. 3d 41, 50, 261 Cal. Rptr. 273 (*Merced*).)  As recently explained by the Fourth District,

> [w]here the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an "accident" merely because the insured did not intend to cause injury. [Citations.]  The insured's subjective intent is irrelevant. [Citations.]  Indeed, it is well established in California that the term "accident" refers to the nature of the act giving rise to liability; not to the insured's intent to cause harm.

(*Fire Ins. Exchange*, *supra*, 181 Cal. App. 4th at pp. 392-393, 104 Cal. Rptr. 3d 534; *see also Merced*, *supra*, 213 Cal. App. 3d at p. 48, 261 Cal. Rptr. 273 ["appellants contend an accident occurs even if the acts causing the alleged damage were intentional as long as the resulting damage was not intended.  The argument urged by appellants has been repeatedly rejected by the appellate courts"].)

. . .

> [Coverage, however, is not] "'always precluded merely because the insured acted intentionally and the victim was injured.'" (*Quan*, *supra*, 67 Cal. App. 4th at p. 598, 79 Cal. Rptr. 2d 134.)  Rather, an accident may exist "when any aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity." (*Merced*, *supra*, 213 Cal. App. 3d at p. 50, 261 Cal. Rptr. 273; *see also Shell Oil*, *supra*, 12 Cal. App. 4th at p. 751, 15 Cal. Rptr. 2d 815 ["we should not be misunderstood as suggesting that an expected or intended act at any point in the causal chain of events means that any resulting damage was not caused by accident"].)  However, "where damage is the direct and immediate result of an intended . . . event, there is no accident." (*Shell Oil*, *supra*, 12 Cal. App. 4th at p. 751, 15 Cal. Rptr. 2d 815.)

*State Farm Gen. Ins. Co. v. Frake*, 197 Cal. App. 4th 568, 579-81 (Cal. App. 2d Dist. 2011).  In light of this legal standard, the court does not see, at the pleading stage, how the Mackranis' allegations (cited by State National in its opposition) that Mr. Khatri used "threatening and abusive language," "menac[ed] [Veena Mackrani] physically," "threaten[ed] her with attack with a foreign object," and "threw a hard plastic brochure holder" at her, Complaint, Exh. B ¶¶ 43, 47, could have been construed as conclusive regarding whether the resulting physical harm alleged by the Mackranis was accidental.  As alleged, the Mackranis' claims for assault, battery, and negligent infliction of emotional distress were potentially covered under the Policy.

Third, the Mackranis' defamation and false imprisonment claims also were potentially covered under the Policy.  As Defendants note in their reply, it was not certain at the outset of the Mackrani Action whether the Policy's Employment-Related Practices Exclusion applied.  Reply, ECF No. 13 at 6.  For instance, the court notes that the Mackranis alleged that Arjun Mackrani was employed by

1  Defendants until March 30, 2010, but their defamation claim was based on conduct that occurred on

2  April 22, 2010, after his employment allegedly ended.  *See* Complaint, Exh. B ¶¶ 5, 7, 28.  The court

3  also notes that the Mackranis alleged that Veena Mackrani was employed by Defendants until

4  March 11, 2010, and their false imprisonment claim was based on conduct that occurred that same

5  day – perhaps before, but perhaps after, her employment was terminated.  *See id.*, Exh. B ¶¶ 10, 12,

6  54.

7      Accordingly, because the court finds that at least one of the Mackranis' claims were potentially

8  covered under the Policy, State National's first claim for reimbursement of all of its defense

9  expenses is dismissed with prejudice.

10      *2.  State National's Second Claim*

11      State National also brings a claim for reimbursement of some of the expenses it incurred in

12  defending the Mackrani Action because not all of the claims were potentially covered under the

13  Policy.  *See* Complaint, ECF No. 1 ¶¶ 36-40.

14      Under California law, "in a 'mixed' action, in which some of the claims are at least potentially

15  covered and the others are not, the insurer has a duty to defend as to the claims that are at least

16  potentially covered, having been paid premiums by the insured therefor, but does not have a duty to

17  defend as to those that are not, having not been paid therefor."  *Buss v. Superior Court*, 16 Cal. 4th

18  35, 47-48 (1997).  While in such a mixed action "the insurer has a duty to defend the action in its

19  entirety," *id.* at 48 (citing *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993)), if the

20  insurer reserved its rights to later seek reimbursement of defenses costs, it may do so "[a]s to the

21  claims that are not even potentially covered," *id.* at 50, 61 n.27.  Even so, the insurer still may only

22  be reimbursed for "[d]efense costs that can be allocated solely to the claims that are not even

23  potentially covered," *id.* at 52, and it is the insurer's burden to show that it is entitled to

24  reimbursement beyond a preponderance of the evidence, *id.* at 53.

25      Here, Defendants argue that State National's claim simply is not sufficiently alleged.  Motion to

26  Dismiss, ECF No. 9-1 at 13-14.  They say that State National does not allege that any defense

27  expenses it incurred "fall into the category of expenses 'related to solely uncovered claims" or

28  "advise us of what sums are related to uncovered claims set forth in the Mackrani [Action]."  *Id.* at

UNITED STATES DISTRICT COURT
For the Northern District of California

14.  Alternatively, Defendants say that, because State National has not sufficiently identified "what defense costs were incurred merely in regards to the uncovered claims," State National has not given them "fair notice" as to what it believes it is entitled.  *Id.*  State National responds simply by saying that it "is not required to prove its damages in the complaint" and arguing that Defendants implicitly admitted that at least some of the Mackranis' claims were potentially not covered under the Policy when Defendants, in their motion to dismiss, identified only the Mackranis' claims for defamation, assault, battery, false imprisonment, and negligence infliction of emotional distress as potentially covered.  Opposition, ECF No. 12 at 10 (citing Motion to Dismiss, ECF No. 9-1 at 12).

It is true that State National's allegations in support of this claim are few and lacking in specificity.  *See* Complaint, ECF No. 1 ¶¶ 36-40.  State National, as Defendants point out, does not even allege which of the Mackranis' claims it believes were potentially not covered.  And while it need not "prove its damages in the complaint," it does need to provide Defendants with some notice about which of the Mackranis' claims will be at issue.  Presumably, State National did not allege, in its second claim, which of the Mackranis' claims were potentially not covered because it did not want to undermine its first claim, which alleged that all of the Mackranis' claims were potentially not covered.  But because the court dismisses State National's first claim with prejudice, State National may have an easier time alleging its second claim with more specificity next time.  For this reason, the court dismisses State National's second claim without prejudice.

> ### 3.  *State National's Third and Fourth Claims*

With its third claim, State National seeks reimbursement of all (third claim) or some (fourth claim) of the expenses it incurred in settlement (as opposed to the defense) of the Mackrani Action because State National indemnified Defendants for claims not covered under the Policy.  *See* Complaint, ECF No. 1 ¶ 41-52.  Defendants argue that State National's claims fail because it does not allege all of the requirements needed for reimbursement of settlement expenses.  Motion to Dismiss, ECF No. 9-1 at 15-21.

The court agrees with Defendants.  California law is clear that "[i]nsurers have a quasi-contractual right to seek reimbursement for settlement payments made for claims not covered by the policy."  *Burlington Ins. Co. v. Devdhara*, No. C 09-00421 SBA, 2010 WL 3749301, at *7

(N.D. Cal. Sept. 23, 2010) (citing *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal. 4th 489, 503 (2001)).  To seek reimbursement for non-covered claims in a reasonable settlement, an insurer must make: (1) "a timely and express reservation of rights"; (2) "an express notification to the insureds of the insurer's intent to accept a proposed settlement offer"; and (3) "an express offer to the insureds that they may assume their own defense when the insurer and insureds disagree whether to accept the proposed settlement." *Blue Ridge*, 25 Cal. 4th at 502.

Here, Defendants correctly point out that State National does not allege the second and third Blue Ridge requirements for the $137,500 settlement offer that ultimately was accepted by State National.  Defendants acknowledge that State National may have satisfied all of these requirements with respect to the Mackranis' original offer of $125,000, *see* Reply, ECF No. 13 at 14, but they also note that the $125,000 offer was repudiated, that further negotiations between the Mackranis and State National ensued and led to the Mackranis making a second settlement offer – this time for $137,500 – and that State National thereafter (1) never provided them with an express notification that it intended to accept the Mackranis' $137,500 offer, and (2) never provided them with an express offer to assume their own defense if they disagreed with State National's decision to accept the $137,500 offer, *see id.*

State National responds by stating that it "did not initiate two separate attempts to settle the [Mackrani Action]," Opposition, ECF No. 12 at 12, but this misses the point.  It does not matter whether State National initiated settlement talks or not; it matters only whether State National complied with the *Blue Ridge* requirements for the offer made and accepted.  As the complaint alleges, the Mackranis originally offered to settle for $125,000.  Complaint, ECF No. 1 ¶ 18. Defendants and State National agreed that this offer was reasonable, and State National agreed to pay the entire $125,000 settlement amount under a reservation of rights.  *Id.* ¶ 20. Later, Defendants informed State National that they would not sign the settlement agreement, so State National notified Defendants that if they did not want State National to accept the $125,000 offer they should assume their own defense.  *Id.* ¶¶ 25-26.  Defendants did not assume their own defense and instead "repudiated" the $125,000 settlement.  *Id.*  After Defendants repudiated the $125,000 offer, the Mackranis and State National continued to negotiate, and they agreed to settle for $137,500.  *Id.* ¶

1   27.[2]  The complaint contains no allegations about the *Blue Ridge* requirements being met for the

2   second settlement offer that the Mackranis made after Defendants repudiated the earlier $125,000

3   offer, *see generally id.*, and State National provides no authority for an argument that its compliance

4   with the *Blue Ridge* requirements for the $125,000 offer somehow applies to the subsequent offer

5   that the Mackranis made, *see generally* Opposition, ECF No. 12.

6       In light of State National's failure to allege facts to show that it complied with the Blue Ridge

7   requirements for the subsequent offer that the Mackranis made after Defendants repudiated their

8   original $125,000 offer, its third and fourth claims must be dismissed.  Because it is not clear that

9   State National will not be able to allege such facts, the court dismisses its third and fourth claims

10  without prejudice.[3]

11  **II.  DEFENDANTS' MOTION TO STRIKE**

12      **A.  Legal Standard**

13      Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient

14  defense or any redundant, immaterial, impertinent, or scandalous matter."  Courts may use Rule

15  12(f) to strike from complaints requests for damages that cannot be awarded as a matter of law.  *See*

16  *Gay-Straight Alliance Network v. Visalia Unified School Dist.*, 262 F. Supp. 2d 1088, 1110-11 (E.D.

17  Cal. 2001).  Motions to strike are regarded with disfavor, as they are often used as delaying tactics,

18  and should not be granted "unless it is clear that the matter to be stricken could have no possible

19  bearing on the subject matter of the litigation."  *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp.

20

21      [2] In its opposition, State National states: "Defendants repudiated their settlement agreement
    with the Mackranis.  State National then expressly offered to permit the Defendants to assume their
22  own defense if they did not want State National to settle with the Mackranis.  'Defendants did not
    assume their own defense.' [Citation.] So, 'State National settled the [Mackrani Action] for
23  $137,500.' [Citation.]"  Opposition, ECF No. 12 at 12.  This recitation of the events, however, is out
24  of order.  According to the complaint, as described above, State National notified Defendants that
    they should assume their own defense if they did not want it to settle with the Mackranis for
25  $125,000, and Defendants did not so do.  *See* Complaint, ECF No. 1 ¶¶ 25-26.  Then, Defendants
26  repudiated the Mackranis' $125,000 offer.  *Id.* ¶ 26.

27      [3] Because the court dismisses State National's third and fourth claims on this ground, the
28  court does not reach Defendants' other arguments regarding the sufficiency of these claims more
    generally.  *See* Motion to Dismiss, ECF No. 9-1 at 17-21.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  1335, 1339 (N.D. Cal. 1991).  In the Ninth Circuit, motions to strike are proper, even if the material

2  is not prejudicial to the moving party, if granting the motion would make trial less complicated or

3  otherwise streamline the ultimate resolution of the action.  *See Fantasy, Inc. v. Fogerty*, 984 F.2d

4  1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).  When considering a

5  motion to strike, a court must view the pleadings in a light most favorable to the non-moving party.

6  *California ex rel. State Lands Comm'n v. United States*, 512 F. Supp. 36, 39 (N.D. Cal. 1981).

7  **B. Application**

8      Defendants also move to strike from State National's complaint "nonrelated allegations . . .

9  relating to Defendants' duty as insureds to cooperate with its insurer during the course of the defense

10  of the Mackrani [Action], and any alleged breach of such duty State National alleges."  Motion to

11  Strike, ECF No. 10-1 at 2.    Specifically, Defendants ask the court to strike all of Paragraph 17 and

12  Lines 2 and 3 of Paragraph 18 of the Complaint.  *Id.* at 3.  Paragraph 17 states:

13          Ignoring State National's requests, [D]efendants and their independent counsel
        refused to communicate with and provide invoices for attorneys' fees and costs to
14      State National until August 2012.  By August 2012, the parties had significantly
        litigated the Mackrani [Action], clarified [the Mackranis'] claims, and developed the
15      factual bases of each of [the Mackranis'] claims, all of which State National knew
        nothing about.  Defendants breached the cooperation clause in State National's policy
16      by refusing to disclose information, pleadings, discovery, and opinions about
        [D]efendants' exposure to the Mackranis' claims.

17

18  Complaint, ECF No. 1 ¶ 17.  And Lines 2 and 3 of Paragraph 18 state: "Defendants refused to

19  provide State National with copies of the parties' mediation briefs.  Despite [D]efendants' complete

20  lack of cooperation, [State National] participated in the mediation."  *Id.* ¶ 18.  State National

21  responds by asserting that these allegations "are material to [its] claims because they tend to prove

22  Defendants' motive to corner [it] at the mediation to force it pay claims that [D]efendants knew were

23  not covered under the [P]olicy.  Defendants' knowledge that the Mackranis' claims were not

24  covered under the [P]olicy tends to prove that the Mackranis' claims were not covered by the

25  [P]olicy."  Opposition, ECF No. 12 at 14.

26      The problem with State National's explanation is that, in this action, it does not matter whether

27  Defendants knew or believed that some or all of the Mackranis' claims were covered under the

28  Policy; whether the Mackranis' claims actually are covered under the Policy is a question of law for

1  this court to answer (and presumably that is one reason State National filed the instant action).  *See*

2  *Armstrong World Indus., Inc. v. Aetna Cas. & Surety Co.*, 45 Cal. App. 4th 1, 35 (Cal. App. 1st Dist.

3  1996) ("Interpretation of an insurance policy is primarily a judicial function.").  Because that it is the

4  case, and because State National's allegations do not relate to any of its four claims and thus do not

5  bear upon the subject matter of this litigation, Paragraph 17 and Lines 2 and 3 of Paragraph 18

6  should be struck from State National's complaint.  However, in light of the court's decision to

7  dismiss the complaint, the court denies as moot Defendants' motion to strike.  Should State National

8  file a First Amended Complaint, it should take note that Defendants' argument nevertheless is well-

9  taken.

10                                          **CONCLUSION**

11        For the reasons stated above, the court **GRANTS** Defendants' motion to dismiss.  State

12  National's first claim is **DISMISSED WITH PREJUDICE**, and its second, third, and fourth claims

13  are **DISMISSED WITHOUT PREJUDICE**.  In addition, the court **DENIES AS MOOT**

14  Defendants' motion to strike Paragraph 17 and Lines 2 and 3 in Paragraph 18 of State National's

15  Complaint.  State National may file a First Amended Complaint by May 27, 2013.

16        **IT IS SO ORDERED.**

17  Dated: May 7, 2013

18                                          _____
                                            LAUREL BEELER

19                                          United States Magistrate Judge

20

21

22

23

24

25

26

27

28