UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| STATE NATIONAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>PRADEEP KANTILAL KHATRI, et al.,<br><br>Defendants.<br>_____/ | No. C 13-00433 LB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[Re: ECF No. 19] |

## INTRODUCTION

Plaintiff State National Insurance Company ("State National") filed this action against Pradeep Kantilal Khatri and VNS Hotels, Inc. ("VNS") (collectively, "Defendants") seeking reimbursement of defense fees and costs incurred and indemnity of payments made in relation to a state court action in which State National defended Defendants and ultimately settled with the state court plaintiffs. *See generally* Complaint, ECF No. 1.[1] Defendants move to dismiss State National's First Amended Complaint. Motion to Dismiss FAC, ECF Nos. 19 & 19-1. Pursuant to Civil Local Rule 7-1(b), the court finds these matters suitable for determination without oral arguments and vacates the September 19, 2013 hearing. Upon consideration of the applicable authority, the parties' arguments, and the record in this case, the court **GRANTS IN PART** and **DENIES IN PART** Defendants'

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

motion.

## STATEMENT

State National provided coverage to Defendants under a Commercial General Liability Policy (the "Policy") for the period August 19, 2009 to August 19, 2010 (the "Coverage Period"). FAC, ECF No. 17 ¶ 12, Exh. A (Policy). The Policy names VNS as the "First Insured" and Mr. Khatri is an "Additional Insured," Policy, ECF No. 17 at 17; *id.*, ECF No. 17-1 at 30, and it contains liability coverage for "Advertising Injury," "Bodily Injury," "Personal Injury," and "Property Damage," *id.*, ECF No. 17-1 at 25-29. "Advertising Injury" includes "injury arising out of . . . [o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." *Id.*, ECF No. 17-1 at 33. "Bodily Injury" "means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id.*, ECF No. 17-1 at 33. "Personal Injury" includes "injury, other than 'bodily injury,' arising out of . . . [o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." *Id.*, ECF No. 17-1 at 35. And "Property Damage" means "[p]hysical injury to tangible property, including resulting loss of use of that property," as well as "[l]oss of use of tangible property that is not physically injured." *Id.*, ECF No. 17-1 at 36. The Policy also states that it "applies to 'bodily injury' and 'property damage' only if: (1) [t]he 'bodily damage' or 'property damage' is caused by an 'occurrence' . . . ." *Id.*, ECF No. 17-1 at 25. An "occurrence," in turn, is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.*, ECF No. 17-1 at 35. The Policy also includes an "Employment-Related Practices Exclusion" that excludes from coverage an employee's "'personal injury' arising out of . . . coercion . . . [or] defamation." *Id.*, ECF No. 17-2 at 3.

With the Policy's relevant terms stated, the court now turns to the alleged events. On June 23, 2011, Veena and Arjun Mackrani (collectively, the "Mackranis") filed a complaint against Defendants in San Mateo County Superior Court arising out of conduct that allegedly occurred in part within the Coverage Period (the "Mackrani Action"). *Id.*, ECF No. 17 ¶ 13, Exh. B (the "Mackrani Complaint"). They alleged claims for: (1) Non-payment of Wages, (2) Waiting Time

Penalties, (3) Interference with Employment by Misrepresentation, (4) Defamation by Slander Per Se, (5) Unfair Business Practices, (6) Assault, (7) Battery, (8) False Imprisonment, (9) Intentional Infliction of Emotional Distress, and (10) Negligent Infliction of Emotional Distress. Mackrani Complaint, ECF No. 17-2 ¶¶ 4-69. On July 19, 2011, Defendants' counsel tendered the defense and indemnification of the Mackrani Action to State National and demanded that their personally-retained counsel represent them pursuant to California Civil Code § 2860. FAC, ECF No. 17 ¶ 14. On August 24, 2011, State National agreed to defend the Mackrani Action under a reservation of rights to seek reimbursement of attorney's fees, costs, and expenses and to seek indemnification "of claims that are not potentially covered under the policy." *Id.*, ECF No. 17 ¶ 15. State National also agreed to Defendants' designation of counsel under Civil Code § 2860. *Id.* Pursuant to Civil Code § 1860, State National asked Defendants and their counsel to provide reports to it "advising it of information learned during discovery and investigation in the Mackrani [Action], which is necessary to permit State National to evaluate [Defendants'] liability and damages exposure . . . ." *Id.*, ECF No. 17 ¶ 16.

In August 2012, Defendants notified State National of an upcoming mediation—it was scheduled to take place in September 2012—in the Mackrani Action. *Id.*, ECF No. 17 ¶ 17. State National participated in the mediation. *Id.* At the mediation, Defendants "demanded that [State National] fully indemnify in full and final settlement of the [Mackrani Action]." *Id.* The mediation resulted in a two-pronged Mediator's Proposal, "which required the parties to (1) agree to a full and final settlement of the [Mackrani Action] for $125,000; and (2) for [D]efendants to mutually release all claims that may have against the Mackranis." *Id.* "The proposed mutual release," State National alleges, "was an agreement separate from the proposed settlement of the [Mackrani Action], but was material to the Mackranis' acceptance of the settlement of their complaint against [D]efendants." *Id.*, ECF No. 17 ¶ 18.

Defendants "agreed [that] the Mediator's Proposal was a reasonable settlement of the [Mackrani Action]," and they also agreed "to mutually release the Mackranis' from any and all future claims [they] may have against the Mackranis." *Id.*, ECF No. 17 ¶ 19. Defendants also demanded that State

National "fund the entire Mediator's Proposal in settlement of the [Mackrani Action] for $125,000," and "threatened to sue State National for tortious breach of [the Policy] if [it] did not fund the entire settlement of the claims [D]efendants admitted were not covered by [the Policy]." *Id.* State National alleges that Mackranis and Defendants both accepted the Mediator's Proposal, but Defendants "refused to contribute to settle claims [D]efendants admitted were not covered under the [P]olicy." *Id.*, ECF No. 17 ¶ 20.

On September 28, 2012, "hours before the Mediator's Proposal was to expire, and in the face of [D]efendants' acceptance of both prongs of the Mediator's Proposal," State National "agreed to fund the entire $125,000 in settlement of the [Mackrani Action] under a strict reservation of rights to seek reimbursement from [D]efendants for moneys it paid to defend a claim not potentially covered under the [P]olicy and to indemnify claims not actually covered under the [P]olicy." *Id.*, ECF No. 17 ¶ 21. State National agreed to do so even though Defendants continued to refuse to contribute to the settlement amount. *Id.*

Thereafter, the Mackranis' counsel and Defendants' counsel mutually drafted a written settlement agreement (which included Defendants' release of all claims they may have against the Mackranis), but only the Mackranis signed it. *Id.*, ECF No. 17 ¶ 22. Nevertheless, State National alleges that Defendants "performed the settlement agreement b demanding that State National forward the $125,000 settlement payment to the Mackranis." *Id.*, ECF No. 17 ¶ 23. Defendants also filed a Notice of Settlement of the Mackrani Action in the Superior Court. *Id.*

On October 22, 2012, State National "complied with [D]efendants' demand and transmitted the $125,000 [in] settlement funds to the Mackranis' attorney in full and final settlement of the [Mackrani Action] under the reservation of rights to seek reimbursement." *Id.*, ECF No. 17 ¶ 24. By November 27, 2012, "the Mackranis had not received the settlement agreement with [D]efendants' signatures and notified State National and [D]efendants that they would void the settlement" if they did not receive a fully executed copy with Defendants' signatures on it by December 4, 2012. *Id.*, ECF No. 17 ¶ 25. On November 30, 2012, Defendants "notified State National that they would not sign their agreement to mutually release the Mackranis because State National was reserving its right to seek reimbursement." *Id.*, ECF No. 17 ¶ 25. On December 3,

1 2012, State National "notified [D]efendants that they should assume their own defense if they did
2 not want State National to settle the [Mackrani Action] under [its] express right to reimbursement."
3 *Id.*, ECF No. 17 ¶ 27.  Defendants did not assume their own defense and instead "repudiated" their
4 "separate agreement to release the Mackranis from all claims."  *Id.*  Following this repudiation, the
5 Mackranis nevertheless "agreed to accept $125,000 to settle all claims in [the Mackrani Action]
6 against [D]efendants."  *Id.*  And on December 6, 2012, State National "consented to the Mackranis'
7 execution of its $125,000 payment in full and final settlement of the [Mackrani Action] under a strict
8 reservation of rights to seek reimbursement from [D]efendants."  *Id.*, ECF No. 17 ¶ 28.  The
9 Mackranis "allocated" the $125,000 as follows: $60,000 for attorney's fees; $20,000 for
10 compensation for unpaid wages; $39,000 for emotional distress damages for assault and loss of
11 consortium; and $6,000 for civil penalties.  *Id.*, ECF No. 17 ¶ 29.

12 Thereafter, State National alleges that the Mackranis said they would sue Defendants for their
13 breach of their release of all claims they may have against the Mackranis.  *Id.*, ECF No. 17 ¶ 31.
14 "[T]o settle their inchoate claim," the Mackranis demanded $50,000.  *Id.*  So, on December 11, 2012
15 and apparently after negotiation, "as an accommodation to [Defendants]," State National agreed to
16 pay the Mackranis $12,500 to settle" the claim.  *Id.*, ECF No. 17 ¶ 32.  State National says that it
17 was not required to notify Defendants of their right to assume their own defense with respect to the
18 Mackranis' "specific performance and breach of contract claims because the claims were not yet
19 filed and were inchoate."  *Id.*  In other words, "[t]here was nothing at that time to defend."  *Id.*

20 State National alleges that it paid $66,576.42 in attorney's fees and costs related to the defense of
21 the Mackrani Action.  *Id.*, ECF No. 17 ¶ 33.

22 State National filed the instant action on January 30, 2013.  *See generally* Original Complaint,
23 ECF No. 1.  It initially brought claims for: (1) reimbursement of all expenses incurred in defense of
24 the Mackrani Action because there were no potentially covered claims under the Policy; (2)
25 reimbursement of some expenses incurred in defense of the Mackrani Action because not all claims
26 were potentially covered under the Policy; (3) reimbursement of all expenses incurred in settlement
27 of the Mackrani Action because State National indemnified Defendants for claims not covered under
28 the Policy, and (4) reimbursement of some expenses incurred in settlement of the Mackrani Action

because State National indemnified Defendants for claims not covered under the Policy. *See id.* ¶¶ 31-52. On Defendants' motion, the court dismissed with prejudice State National's first claim because it found that the Mackranis' defamation, assault, battery, false imprisonment, and negligent infliction of emotional distress were potentially covered under the Policy. 5/7/2013 Order, ECF No. 14 at 7-11. The court dismissed without prejudice State National's second claims because it was not sufficiently specific, and dismissed without prejudice State National's third and fourth claims because State National did not allege all of the requirements needed for reimbursement of settlement expenses. *Id.* at 11-14. The court granted State National leave to file a First Amended Complaint. *Id.* at 16.

State National did so. FAC, ECF No. 17. In it, State National realleged its first claim—the one that the court previously dismissed with prejudice—as well as its second, third, and fourth claims, and it also added a fifth claim for breach of contract. *Id.* ¶¶ 34-61.[2]

Defendants now move to dismiss State National's First Amended Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Motion to Dismiss FAC, ECF Nos. 19 & 19-1. State National opposes the motion. Opposition, ECF No. 22.

## ANALYSIS

### I. LEGAL STANDARD

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557.). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

---

[2] In its First Amended Complaint, State National noted with respect to its first claim that it intended to file a motion asking the court to reconsider its dismissal of that claim with prejudice. FAC, ECF No. 17 at 9 n.1. State National filed such a motion, Motion for Reconsideration, ECF No. 18, and on August 8, 2013, the court denied it, 8/8/2013 Order, ECF No. 24.

1  obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and
2  conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual
3  allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S.
4  at 555 (internal citations and parentheticals omitted).

5   In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true
6  and construe them in the light most favorable to the plaintiff. *See id*. at 550; *see also Erickson v.*
7  *Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir.
8  2007).

9  If the court dismisses the complaint, it should grant leave to amend even if no request to amend
10 is made "unless it determines that the pleading could not possibly be cured by the allegation of other
11 facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc.*
12 *v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). But when a party
13 repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See*
14 *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where
15 district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim
16 with leave to amend).

17 **II. APPLICATION**

18  **A. State National's First Claim**

19 As noted above, State National realleges its first claim for reimbursement of all of the expenses
20 it incurred in defending the Mackrani Action because, it contends, none of the claims were
21 potentially covered under the Policy. *See* FAC, ECF No. 17 ¶¶ 34-38. Also as noted above, the
22 court previously dismissed this claim with prejudice after finding that the Mackranis' defamation,
23 assault, battery, false imprisonment, and negligent infliction of emotional distress were potentially
24 covered under the Policy. 5/7/2013 Order, ECF No. 14 at 7-11. The court also denied State
25 National's motion for reconsideration of this decision. 8/8/2013 Order, ECF No. 24. State
26 National's first claim, then, still is **DISMISSED WITH PREJUDICE**.

27  **B. State National's Second Claim**

28 State National also realleges its second claim for reimbursement of some of the expenses it

incurred in defending the Mackrani Action because not all of the claims were potentially covered under the Policy. FAC, ECF No. 17 ¶¶ 39-44.

Under California law, "in a 'mixed' action, in which some of the claims are at least potentially covered and the others are not, the insurer has a duty to defend as to the claims that are at least potentially covered, having been paid premiums by the insured therefor, but does not have a duty to defend as to those that are not, having not been paid therefor." *Buss v. Superior Court*, 16 Cal. 4th 35, 47-48 (1997). While in such a mixed action "the insurer has a duty to defend the action in its entirety," *id.* at 48 (citing *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993)), if the insurer reserved its rights to later seek reimbursement of defenses costs, it may do so "[a]s to the claims that are not even potentially covered," *id.* at 50, 61 n.27. Even so, the insurer still may only be reimbursed for "[d]efense costs that can be allocated solely to the claims that are not even potentially covered," *id.* at 52, and it is the insurer's burden to show that it is entitled to reimbursement beyond a preponderance of the evidence, *id.* at 53.

In the last round, Defendants argued that State National's claim simply was not sufficiently alleged. Motion to Dismiss Original Complaint, ECF No. 9-1 at 13-14. The court agreed, stating:

> It is true that State National's allegations in support of this claim are few and lacking in specificity. *See* Complaint, ECF No. 1 ¶¶ 36-40. State National, as Defendants point out, does not even allege which of the Mackranis' claims it believes were potentially not covered. And while it need not "prove its damages in the complaint," it does need to provide Defendants with some notice about which of the Mackranis' claims will be at issue. Presumably, State National did not allege, in its second claim, which of the Mackranis' claims were potentially not covered because it did not want to undermine its first claim, which alleged that all of the Mackranis' claims were potentially not covered. But because the court dismisses State National's first claim with prejudice, State National may have an easier time alleging its second claim with more specificity next time. For this reason, the court dismisses State National's second claim without prejudice.

5/7/2013 Order, ECF No. 14 at 11-12.

Defendants again say that State National's claim is not sufficiently alleged, but this time the court disagrees. In its First Amended Complaint, State National identifies five of the Mackranis' claims that it believes were not potentially covered by the Policy, namely, the Mackranis' claims for nonpayment of wages, waiting time penalties, interference with employment by misrepresentation, unfair and illegal business practices, and intentional infliction of emotional distress. FAC, ECF No.

17 ¶ 42.  State National also alleges that "[o]f the $66,516.42 that [it] paid to defend, [it] is informed and believes that 5.4% of those expenses are related to claims this court has found were potentially covered under the [P]olicy and 94.6% are related to claims not potentially covered."  *Id.*, ECF No. 17 ¶ 44.  State National therefore seeks reimbursement of $62,981.29 in defense costs.  *Id.*

Citing *Buss*, Defendants argue that "[i]t is not enough to state a mere percentage of the amount of defense costs that the insurer believes to be covered versus non-convered" and thus "State National must allege that such 'percentages' were attributed solely to noncovered claims," Motion to Dismiss FAC, ECF No. 19-1 at 15, but *Buss* says only that the insurer still may only be reimbursed for "[d]efense costs that can be allocated solely to the claims that are not even potentially covered," 16 Cal. 4th at 52, and that it is the insurer's burden to show that it is entitled to reimbursement beyond a preponderance of the evidence, *id.* at 53.  *Buss* does not say that an insurer must always use the word "solely" in its allegations, lest the complaint be deemed insufficient.  Having seen State National's revised allegations—which point out specifically which claims it believes were not potentially covered—Defendants' assertion that they "have not been given fair notice of exactly what allocation of defense costs" to which State National believes it is entitled is not persuasive.  To the extent that Defendant wish to argue that some of the costs that State National asserts are "related" to claims that were not potentially covered are not "solely" attributed to those claims, that is a matter for summary judgment or trial.  State National's second claim **SURVIVES**.

### C.  State National's Third and Fourth Claims

State National also once again realleges its claims for reimbursement of all (third claim) or some (fourth claim) of the expenses it incurred in settlement (as opposed to the defense) of the Mackrani Action because State National indemnified Defendants for claims not covered under the Policy.  FAC, ECF No. 17 ¶ 45-56.  Defendants argue that these claims should be dismissed for three reasons: (1) the allegations in the First Amended Complaint are so different from those in the Original Complaint that they are not plausible and, in fact, suggest that State National is acting in bad faith; (2) even if the allegations are accepted, State National does not sufficiently allege an agreement; and (3) even if State National does sufficiently allege an agreement, it does not allege that it met all of the requirements under *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal. 4th 489 (2001).

1 Motion to Dismiss FAC, ECF No. 19-1 at 16-24.  Defendants also argue that State National's fourth
2 claim should be dismissed because it has not sufficiently alleged which of the Mackranis' claims
3 actually were not covered by the Policy.  *Id.* at 24-25.  The court addresses Defendants' challenges
4 in turn.

### *1. State National's May Allege Facts in Its First Amended Complaint that Are Different from or even Contradictory to Those Alleged in Its Original Complaint and Doing So Does Not Necessarily Make Its Claims Implausible*

8 In their motion, Defendants point out that State National's story appears to have changed from
9 its Original Complaint to its First Amended Complaint.  This is true.  In its Original Complaint,
10 State National alleged that there were two distinct attempts to settle the Mackrani Action and which
11 led to a single settlement of $137,500: first there was a negotiation that led to a settlement offer of
12 $125,000 that Defendants initially agreed to but later repudiated and then there was a second
13 negotiation that led to a settlement offer of $137,500.  It was this $137,500 offer that was accepted
14 by State National and resulted in the settlement of the Mackrani Action.  Based on these allegations
15 and others, the court ruled that State National had not fulfilled all of the *Blue Ridge* requirements
16 after the second negotiation and before it and the Mackranis agreed to settle the Mackrani Action for
17 $137,500.  Now, State National alleges that there was only one negotiation, and it led to a settlement
18 of the Mackrani Action for $125,000.  Thereafter, because Defendants refused to execute the mutual
19 release of claims, State National and the Mackranis had negotiations unrelated to the Mackrani
20 Action and which resulted in State National paying the Mackranis an additional $12,500.

21 Defendants argue that this sudden switch in factual allegations demonstrates that State National
22 does not allege plausible claims for reimbursement of the amounts it paid to settle the Mackrani
23 Action.[3]  While they are correct that courts may, and have, looked to a plaintiff's prior allegations

---

25 [3] Defendants also suggest that State National's switch also demonstrates its bad faith attempt
26 to "play fast and loose" with the judicial system.  Motion to Dismiss FAC, ECF No. 19-1 at 6; *see id.* at 20-23 (positing that State National intentionally fabricated allegations in either the Original Complaint or the First Amended Complaint).  But as the Ninth Circuit has made clear, this
27 suggestion is to be taken up on a motion pursuant to Rule 11, not a motion pursuant to Rule 12.  *See*
28 *PAE Gov't Servs*, 514 F.3d at 859 ("This does not mean, of course, that allegations in a complaint can never be frivolous, or that a district court can never determine that a complaint or answer was

C 13-00433 LB
ORDER                                                                10

1  when deciding whether the plaintiff's operative allegations suggest a plausible claims, *see Fasugbe*
2  *v. Willms*, No. CIV. 2:10-2320 WBS KJN, 2011 WL 2119128 (E.D. Cal. May 26, 2011); *Cole v.*
3  *Sunnyvale*, No. C-08-05017 RMW, 2010 WL 532428 (N.D. Cal. Feb. 9, 2010) (Whyte, J.), it also is
4  true that "there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing
5  successive pleadings that make inconsistent or even contradictory allegations," *PAE Gov't Servs.,*
6  *Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007). One of the reasons for this is that at the outset
7  of a case, a plaintiff may not have all of the facts completely nailed down. As the Ninth Circuit has
8  explained:

> At the time a complaint is filed, the parties are often uncertain about the facts and the law; and yet, prompt filing is encouraged and often required by a statute of limitations, laches, the need to preserve evidence and other such concerns. In recognition of these uncertainties, we do not require complaints to be verified, *see* Fed. R. Civ. P. 11(a), and we allow pleadings in the alternative—even if the alternatives are mutually exclusive. As the litigation progresses, and each party learns more about its case and that of its opponents, some allegations fall by the wayside as legally or factually unsupported. This rarely means that those allegations were brought in bad faith or that the pleading that contained them was a sham. Parties usually abandon claims because, over the passage of time and through diligent work, they have learned more about the available evidence and viable legal theories, and wish to shape their allegations to conform to these newly discovered realities. We do not call this process sham pleading; we call it litigation.

16  *Id.* at 858-59. Here, the court believes that, in light of the authority described above, State
17  National's previous allegations do not necessarily render its new allegations implausible such that
18  the court should dismiss its claims at this time.[4] It may be that the allegations in State National's
19  First Amended Complaint turn out to be true, or it may not, but that is a matter to be addressed later.

---

filed in bad faith. But the mechanism for doing so is in Rule 11, which deals specifically with bad faith conduct."). That said, the Ninth Circuit also has stated that "the fact that an amended complaint (or answer) contains an allegation that is apparently contrary to an earlier iteration of the same pleading" does "[n]ot necessarily" "render the later pleading a sham." *Id.* at 858.

[4] Still, State National's previous allegations may still bear upon its credibility in a trial in this action or its ability to argue a different version in a different action. *See PAE Gov't Servs*, 514 F.3d at 859 n.2 ("PAE's earlier allegation may or may not have relevance to further proceedings in the case . . . . To the extent the superseded pleading is verified, it becomes something akin to a sworn declaration, and the party that presented it may suffer a loss of credibility before the trier of fact, which may be less inclined to believe a party that has sworn to inconsistent material statements. Also, a party's representations may judicially estop it from taking a contrary position in later proceedings.").

### *2. State National's Allegation of an Agreement is Sufficient to Withstand a Motion to Dismiss*

Defendants also argue that, even the allegations are accepted, State National does not sufficiently allege an agreement. Specifically, Defendants say that "State National merely alleges that Defendants agreed to agree to a settlement of the Mackrani [Action] for $125,000, as well as a release of the Mackranis from any possible future claims by Defendants." Motion to Dismiss FAC, ECF No. 19-1 at 16. What they accepted was "only a proposal," and they "did not accept or sign the yet-drafted separate, final and actual settlement agreement once [they] learned that State National would seek reimbursement against its insureds for any and all of the indemnification amount." *Id.* They say that, "[a]s alleged, the Mediator's Proposal was essentially an agreement merely regarding the fairness of the terms that would need a later agreement written and signed by both the Defendants and the Mackranis at some future date and time." *Id.* at 17.

The court disagrees, at least at this time. State National alleges that Defendants and the Mackranis agreed to the Mediator's Proposal, *see* FAC, ECF No. 17 ¶¶ 19, 20, 21, "which required the parties to (1) agree to a full and final settlement of the [Mackrani Action] for $125,000; and (2) for [D]efendants to mutually release all claims that may have against the Mackranis," *id.*, ECF No. 17 ¶ 17. State National's allegations do not state that the Mediator's Proposal "was essentially an agreement merely regarding the fairness of the terms that would need a later agreement written and signed by both the Defendants and the Mackranis at some future date and time," as Defendants argue. Whether Defendants are correct about that, though, is a matter for summary judgment and/or trial. At this stage, State National's allegations of an agreement are sufficient.

### *3. State National Sufficiently Alleges All of the Blue Ridge Requirements*

Defendants also argue that State National's third and fourth claims fail because, once again, it does not allege that it met all of the requirements under *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal. 4th 489 (2001). As the court previously explained, California law is clear that "[i]nsurers have a quasi-contractual right to seek reimbursement for settlement payments made for claims not covered by the policy." *Burlington Ins. Co. v. Devdhara*, No. C 09-00421 SBA, 2010 WL 3749301, at *7 (N.D. Cal. Sept. 23, 2010) (citing *Blue Ridge*, 25 Cal. 4th at 503). To seek reimbursement for

non-covered claims in a reasonable settlement, an insurer must make: (1) "a timely and express reservation of rights"; (2) "an express notification to the insureds of the insurer's intent to accept a proposed settlement offer"; and (3) "an express offer to the insureds that they may assume their own defense when the insurer and insureds disagree whether to accept the proposed settlement." *Blue Ridge*, 25 Cal. 4th at 502.

As Defendants point out in their moving papers, State National alleges that it agreed to settle the Mackrani Action either on September 28, 2012, when it "agreed to fund the entire $125,000 *in settlement of the [Mackrani Action]* under a strict reservation of rights," or on October 22, 2012, when it "transmitted the $125,000 [in] settlement funds to the Mackranis' attorney *in full and final settlement of the [Mackrani Action]* under the reservation of rights." See Motion to Dismiss FAC, ECF No. 19-1 at 23-24.  Defendants then note that State National does not allege that it fulfilled the second *Blue Ridge* requirement by making "an express notification to [Defendants] of [its] intent to accept a proposed settlement offer" or the third Blue Ridge requirement by making an express offer to Defendants that they may assume their own defense, before either of those dates. *Id.*

Citing *Markel Am. Ins. Co. v. G.L. Anderson Ins. Servs., Inc.*, 715 F. Supp. 2d 1068, 1076 (E.D. Cal. 2010), State National responds by arguing that it did not need to make an express notification of its intent to accept the proposed settlement or make an express offer to Defendants that they may assume their own defense because Defendants told it to pay the $125,000 settlement amount and threatened to sue it for bad faith if it did not. *See* Opposition, ECF No. 22 at 10-11.  In *Markel*, Tiffany Cole sued G.L. Anderson Insurance Services, Inc. and Gary Anderson (collectively, the "Anderson Defendants").  715 F. Supp. 2d at 1071.  The Anderson Defendants tendered the defense of the lawsuit to their insurer, Markel American Insurance Company.  *Id.* at 1071-72.  On February 25, 2008, Ms. Cole made a settlement demand for the policy limit of $500,000.  *Id.* at 1072.  On March 26, 2008, Markel told the Anderson Defendants that it would defend them under a reservation of rights and that they could retain independent counsel.  *Id.* at 1072-73.  Thereafter, Markel discussed with the Anderson Defendants whether they would contribute to settlement, and while the Anderson Defendants refused to pay anything, they still demanded that Markel settle the lawsuit.  *Id.* at 1073.  Markel then told the Anderson Defendants that it had authorized acceptance of the

settlement demand and shortly thereafter officially accepted Ms. Cole's $500,000 offer. *Id.*

After this, Markel sued the Anderson Defendants to recover the amount it paid to settle Ms. Cole's lawsuit. *Id.* The Anderson Defendants argued in part that Markel did not fulfill the second and third Blue Ridge requirements. *Id.* at 1074. The court rejected their argument, though, stating that

> because defendants hired independent counsel after Markel's explicit notification of their right to do so and because defendants demanded that Markel accept Cole's settlement offer, defendants cannot demonstrate that plaintiff failed to inform them of their right to assume their own defense or that plaintiff failed to make an express notification of the its intent to accept the settlement offer.

*Id.* at 1076. In other words, because the Anderson Defendants knew that Markel was reserving its rights and still demanded that Markel accept Ms. Cole's settlement offer, Markel's did not need to expressly notify the Anderson Defendants of its intent to accept the offer.

The court finds *Markel*'s reasoning to be persuasive and applicable to this case. Here, State National alleges that Defendants demanded at the September 2012 mediation that State National pay the $125,000 settlement amount and threatened to sue it for beach of contract if it did not do so. FAC, ECF No. 17 ¶19. But as Defendants make clear, Defendants' demand was made before State National told them that it would pay the settlement only under a reservation of rights. *Compare id.*, ECF No. 17 ¶ 19 *with* id., ECF No. ¶ 21. Defendants use this fact to argue that they then withdrew their demand that State National settle the Mackrani Action (which would distinguish this case from *Markel*). *See* Reply, ECF No. 23 at 7 ("[O]nce State National expressly reserved their rights to seek reimbursement, Defendants no longer requested that State National settle the claim, as evidenced by the fact that Defendants themselves became unwilling to participate in the settlement.") (citing FAC, ECF No. 17 ¶ 26). The problem with this argument is that it does not appear from State National's allegations that Defendants did anything to indicate their withdrawal of their demand until November 30, 2012, well after State National allegedly accepted the Mackranis' settlement offer in either September or October 2012. *See* FAC, ECF No. 17 ¶¶ 19-26. In fact, State National allegations suggest that Defendants' conduct before that time—which includes Defendants' counsel's participation in drafting a written settlement agreement and Defendants' filing of a Notice of Settlement of the Mackrani Action in the Superior Court—continued to indicate that they

supported the settlement. *See id.*, ECF No. 17 ¶¶ 22-23. Thus, based on State National's version of the facts and under the reasoning described in *Markel*, State National sufficiently alleges that it complied with the second and third *Blue Ridge* requirements.

### *4. State National's Fourth Claim Is Sufficiently Alleged*

Finally, Defendants argue that State National's fourth claim should be dismissed because it has not sufficiently alleged which of the Mackranis' claims actually were not covered by the Policy. Motion to Dismiss FAC, ECF No. 19-1 at 24-25. They analogize to State National's second claim, which, like its fourth claim, seeks reimbursement of a portion, rather than the entirety, of an amount paid. *Id.*

The court, however, sees things differently. When dismissing State National's second claim in its Original Complaint, the court found State National's allegations insufficient because it did not specifically mention which of the Mackranis' claims it believes were not even potentially covered under the Policy. 5/7/2013 Order, ECF No. 12. But this decision was based on the fact that the court dismissed with prejudice State National's first claim, which was for reimbursement of the entire defense amount. *Id.* For that reason, requiring State National to allege in a First Amended Complaint which of the Mackranis' claims were not even potentially covered would not undermine any of State National's other claims.

It is different with respect to State National's third and fourth claims. As explained above, State National's third claim survives, so requiring State National to specify which of the Mackranis' claims are not actually covered by the Policy would undermine its third claim. Defendants know by virtue of State National's third claim that State National seeks all of the $125,000 it paid in settlement of the Mackrani Action, and they know by virtue of State National's fourth claim that State National, alternatively, seeks some lesser amount of that. Thus, Defendants' argument that they are denied of "fair notice" and that it is "impossible to infer . . . what State National believes it is entitled" is not persuasive. *See* Motion to Dismiss FAC, ECF No. 19-1 at 24.

\* \* \*

Accordingly, State National's third and fourth claims therefore **SURVIVE**.

**D. State National's Fifth Claim**

State National's fifth claim—which is new to the First Amended Complaint—is for breach of contract. FAC, ECF No. 17 §§ 57-61. It alleges that the Mackranis and Defendants entered into a contract on September 28, 2014 (the court assumes that this is a typographical error and that State National meant to allege the year 2012) whereby Defendants agreed to release the Mackranis from any and all claims that they might have against the Mackranis, and the Mackranis agreed to release Defendants from any and all claims they might have against Defendants. *Id.*, ECF No. 17 § 59. State National alleges that this contract was made for its benefit because the parties' performance of it would terminate State National's duties to defend and indemnify Defendants with respect to the Mackrani Action. *Id.* In other words, it alleges that it is a third party beneficiary of the contract. So, when Defendants breached this contract by refusing to sign a written mutual release, State National was damaged in the amount of $12,500, which is the amount of money that State National agreed to pay, "as an accommodation to" Defendants, to settle the Mackranis' "inchoate claim" for breach of contract. *Id.*, ECF No. 17 §§ 32, 60-61.

Defendants argue that State National is not a third party beneficiary to this alleged contract. Motion to Dismiss FAC, ECF No. 19-1 at 26-27. They are correct. As the Ninth Circuit has explained:

> California's contract principles on third party beneficiaries are well known. Under California law, a "contract, made expressly for the benefit of a third party, may be enforced by him at any time before the parties thereto rescind it." Cal. Civ. Code § 1559. "A third party qualifies as a beneficiary under a contract if the parties intended to benefit the third party and the terms of the contract make that intent evident." *Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819, 821–22 (9th Cir. 1985) (citing *Strauss v. Summerhays*, 157 Cal. App. 3d 806, 204 Cal. Rptr. 227, 233 (1984)). Although a third party need not be expressly named or identified in a contract, a party must demonstrate "that [it] is a member of a class of persons for whose benefit it was made." *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 90 Cal. Rptr. 3d 453, 469 (2009) (internal quotation marks and citations omitted) (citing *Kaiser Eng'rs, Inc. v. Grinnell Fire Prot. Sys. Co.*, 173 Cal. App. 3d 1050, 1055, 219 Cal. Rptr. 626 (1985)). "Whether the third party is an intended beneficiary . . . involves construction of the intention of the parties, gathered from reading the contract as a whole in light of the circumstances under which it was entered." *Prouty v. Gores Tech. Gr.*, 121 Cal. App. 4th 1225, 18 Cal. Rptr. 3d 178, 184 (2004).

*Balsam v. Tucows, Inc.*, 627 F.3d 1158, 1161 (9th Cir. 2010). Here, there is no indication that the Mackranis and Defendants, by entering into the mutual release contract, intended to benefit State

National. This contract, even as alleged by State National, was separate from the agreement to settle the Mackrani Action. *See* FAC, ECF No. 17 § 18. Moreover, as Defendants point out, State National had no obligation to settle a potential breach of contract dispute between the Mackranis and Defendants: as State National alleges, it had already settled the Mackrani Action by that time. *See id.*, ECF No. 17 § 28. As alleged, State National's attempt to characterize itself as a third party beneficiary to the alleged mutual release contract between the Mackranis and Defendants lacks merit. Nonetheless, given that this is the first time that State National has alleged this claim, the court will give it another chance. Accordingly, State National's fifth claim is **DISMISSED WITHOUT PREJUDICE**.

## CONCLUSION

For the reasons stated above, the court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss State National's First Amended Complaint. State National's first claim is **DISMISSED WITH PREJUDICE** (again), its second, third, and fourth claims **SURVIVE**, and its fifth claim is **DISMISSED WITHOUT PREJUDICE**. State National may file a Second Amended Complaint by September 30, 2013.

**IT IS SO ORDERED.**

Dated: September 13, 2013

_____
LAUREL BEELER
United States Magistrate Judge