UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| STATE NATIONAL INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>PRADEEP KANTILAL KHATRI, et al.,<br><br>    Defendants.<br>_____/ | No. C 13-00433 LB<br><br>**ORDER REGARDING THE PARTIES' JOINT DISCOVERY DISPUTE LETTER DATED APRIL 23, 2014**<br><br>[Re: ECF No. 52] |

**INTRODUCTION**

Plaintiff State National Insurance Company ("State National") filed this action against Pradeep Kantilal Khatri and VNS Hotels, Inc. ("VNS") (collectively, "Defendants") seeking reimbursement of defense fees and costs incurred and indemnity of payments made in relation to a state court action in which State National defended Defendants and ultimately settled with the state court plaintiffs. *See generally* Complaint, ECF No. 1.[1] Defendants now seek to depose the attorneys for State National and the state court plaintiffs about the facts, circumstances, and terms of that settlement. *See* Joint Letter, ECF No. 52 at 1. State National objects to both depositions. *See id.* The court held a hearing on the matter on May 8, 2014. 5/8/2014 Minute Order, ECF No. 55. Upon consideration of the joint letter, the arguments of counsel at the hearing, and the applicable authority, the court

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

rules that Defendants may depose Mr. Scheele and Mr. Orloff (if necessary) about the facts, circumstances, and terms of the Mackrani Action settlement agreement (or agreements), subject to the restrictions stated below.

**STATEMENT**

**I. THE MACKRANI ACTION**

State National provided coverage to Defendants under a Commercial General Liability Policy (the "Policy") for the period August 19, 2009 to August 19, 2010 (the "Coverage Period"). FAC, ECF No. 17 ¶ 12, Exh. A (Policy). On June 23, 2011, Veena and Arjun Mackrani (collectively, the "Mackranis") filed a complaint against Defendants in San Mateo County Superior Court arising out of conduct that allegedly occurred in part within the Coverage Period (the "Mackrani Action"). *Id.*, ECF No. 17 ¶ 13, Exh. B (the "Mackrani Complaint"). They alleged claims for: (1) Non-payment of Wages, (2) Waiting Time Penalties, (3) Interference with Employment by Misrepresentation, (4) Defamation by Slander Per Se, (5) Unfair Business Practices, (6) Assault, (7) Battery, (8) False Imprisonment, (9) Intentional Infliction of Emotional Distress, and (10) Negligent Infliction of Emotional Distress. Mackrani Complaint, ECF No. 17-2 ¶¶ 4-69. On July 19, 2011, Defendants' counsel tendered the defense and indemnification of the Mackrani Action to State National and demanded that their personally-retained counsel represent them pursuant to California Civil Code § 2860. FAC, ECF No. 17 ¶ 14. On August 24, 2011, State National agreed to defend the Mackrani Action under a reservation of rights to seek reimbursement of attorney's fees, costs, and expenses and to seek indemnification "of claims that are not potentially covered under the policy." *Id.*, ECF No. 17 ¶ 15. State National also agreed to Defendants' designation of counsel under Civil Code § 2860. *Id.* Pursuant to Civil Code § 1860, State National asked Defendants and their counsel to provide reports to it "advising it of information learned during discovery and investigation in the Mackrani [Action], which is necessary to permit State National to evaluate [Defendants'] liability and damages exposure . . . ." *Id.*, ECF No. 17 ¶ 16.

In August 2012, Defendants notified State National of an upcoming mediation—it was scheduled to take place in September 2012—in the Mackrani Action. *Id.*, ECF No. 17 ¶ 17. State National participated in the mediation. *Id.* At the mediation, Defendants "demanded that [State National]

C 13-00433 LB
ORDER                                      2

fully indemnify in full and final settlement of the [Mackrani Action]." *Id.*  The mediation resulted in a two-pronged Mediator's Proposal, "which required the parties to (1) agree to a full and final settlement of the [Mackrani Action] for $125,000; and (2) for [D]efendants to mutually release all claims that may have against the Mackranis." *Id.*  "The proposed mutual release," State National alleges, "was an agreement separate from the proposed settlement of the [Mackrani Action], but was material to the Mackranis' acceptance of the settlement of their complaint against [D]efendants." *Id.*, ECF No. 17 ¶ 18.

Defendants "agreed [that] the Mediator's Proposal was a reasonable settlement of the [Mackrani Action]," and they also agreed "to mutually release the Mackranis' from any and all future claims [they] may have against the Mackranis." *Id.*, ECF No. 17 ¶ 19.  Defendants also demanded that State National "fund the entire Mediator's Proposal in settlement of the [Mackrani Action] for $125,000," and "threatened to sue State National for tortious breach of [the Policy] if [it] did not fund the entire settlement of the claims [D]efendants admitted were not covered by [the Policy]." *Id.*  State National alleges that Mackranis and Defendants both accepted the Mediator's Proposal, but Defendants "refused to contribute to settle claims [D]efendants admitted were not covered under the [P]olicy." *Id.*, ECF No. 17 ¶ 20.

On September 28, 2012, "hours before the Mediator's Proposal was to expire, and in the face of [D]efendants' acceptance of both prongs of the Mediator's Proposal," State National "agreed to fund the entire $125,000 in settlement of the [Mackrani Action] under a strict reservation of rights to seek reimbursement from [D]efendants for moneys it paid to defend a claim not potentially covered under the [P]olicy and to indemnify claims not actually covered under the [P]olicy." *Id.*, ECF No. 17 ¶ 21. State National agreed to do so even though Defendants continued to refuse to contribute to the settlement amount. *Id.*

Thereafter, the Mackranis' counsel and Defendants' counsel mutually drafted a written settlement agreement (which included Defendants' release of all claims they may have against the Mackranis), but only the Mackranis signed it. *Id.*, ECF No. 17 ¶ 22.  Nevertheless, State National alleges that Defendants "performed the settlement agreement by demanding that State National

forward the $125,000 settlement payment to the Mackranis." *Id.*, ECF No. 17 ¶ 23. Defendants also filed a Notice of Settlement of the Mackrani Action in the Superior Court. *Id.*

On October 22, 2012, State National "complied with [D]efendants' demand and transmitted the $125,000 [in] settlement funds to the Mackranis' attorney in full and final settlement of the [Mackrani Action] under the reservation of rights to seek reimbursement." *Id.*, ECF No. 17 ¶ 24. By November 27, 2012, "the Mackranis had not received the settlement agreement with [D]efendants' signatures and notified State National and [D]efendants that they would void the settlement" if they did not receive a fully executed copy with Defendants' signatures on it by December 4, 2012. *Id.*, ECF No. 17 ¶ 25. On November 30, 2012, Defendants "notified State National that they would not sign their agreement to mutually release the Mackranis because State National was reserving its right to seek reimbursement." *Id.*, ECF No. 17 ¶ 25. On December 3, 2012, State National "notified [D]efendants that they should assume their own defense if they did not want State National to settle the [Mackrani Action] under [its] express right to reimbursement." *Id.*, ECF No. 17 ¶ 27. Defendants did not assume their own defense and instead "repudiated" their "separate agreement to release the Mackranis from all claims." *Id.* Following this repudiation, the Mackranis nevertheless "agreed to accept $125,000 to settle all claims in [the Mackrani Action] against [D]efendants." *Id.* And on December 6, 2012, State National "consented to the Mackranis' execution of its $125,000 payment in full and final settlement of the [Mackrani Action] under a strict reservation of rights to seek reimbursement from [D]efendants." *Id.*, ECF No. 17 ¶ 28. The Mackranis "allocated" the $125,000 as follows: $60,000 for attorney's fees; $20,000 for compensation for unpaid wages; $39,000 for emotional distress damages for assault and loss of consortium; and $6,000 for civil penalties. *Id.*, ECF No. 17 ¶ 29.

Thereafter, State National alleges that the Mackranis said they would sue Defendants for their breach of their release of all claims they may have against the Mackranis. *Id.*, ECF No. 17 ¶ 31. "[T]o settle their inchoate claim," the Mackranis demanded $50,000. *Id.* So, on December 11, 2012 and apparently after negotiation, "as an accommodation to [Defendants]," State National agreed to pay the Mackranis $12,500 to settle" the claim. *Id.*, ECF No. 17 ¶ 32. State National says that it was not required to notify Defendants of their right to assume their own defense with respect to the

Mackranis' "specific performance and breach of contract claims because the claims were not yet filed and were inchoate." *Id.* In other words, "[t]here was nothing at that time to defend." *Id.*

State National alleges that it paid $66,576.42 in attorney's fees and costs related to the defense of the Mackrani Action. *Id.*, ECF No. 17 ¶ 33.

Throughout the Mackrani Action proceedings and settlement negotiations, State National was represented by attorney Lance Orloff, and the Mackranis were represented by attorney Paul Scheele.

## II. THE INSTANT ACTION

State National filed the instant action on January 30, 2013. *See generally* Original Complaint, ECF No. 1. It initially brought claims for: (1) reimbursement of all expenses incurred in defense of the Mackrani Action because there were no potentially covered claims under the Policy; (2) reimbursement of some expenses incurred in defense of the Mackrani Action because not all claims were potentially covered under the Policy; (3) reimbursement of all expenses incurred in settlement of the Mackrani Action because State National indemnified Defendants for claims not covered under the Policy, and (4) reimbursement of some expenses incurred in settlement of the Mackrani Action because State National indemnified Defendants for claims not covered under the Policy. *See id.* ¶¶ 31-52. On Defendants' motion, the court dismissed with prejudice State National's first claim because it found that the Mackranis' defamation, assault, battery, false imprisonment, and negligent infliction of emotional distress were potentially covered under the Policy. 5/7/2013 Order, ECF No. 14 at 7-11. The court dismissed without prejudice State National's second claims because it was not sufficiently specific, and dismissed without prejudice State National's third and fourth claims because State National did not allege all of the requirements needed for reimbursement of settlement expenses. *Id.* at 11-14. The court granted State National leave to file a First Amended Complaint. *Id.* at 16.

State National did so. FAC, ECF No. 17. In it, State National realleged its first claim—the one that the court previously dismissed with prejudice—as well as its second, third, and fourth claims, and it also added a fifth claim for breach of contract. *Id.* ¶¶ 34-61. On September 13, 2013, the court granted in part and denied in part Defendants' motion to dismiss it. *See* Motion to Dismiss FAC, ECF No. 19; 9/13/2013 Order, ECF No. 26. Specifically, the court reiterated it dismissal with

prejudice of State National's first claim, dismissed without prejudice State National's fifth claim for breach of contract, and found that State National's second, third, and fourth claims survived. *See id.*

With respect to State National's third and fourth claims, Defendants in part argued that those claims failed because State National's allegations about the settlement agreement were implausible and insufficient. *See* Motion to Dismiss FAC, ECF No. 19 at 16-23. The court disagreed and explained the matter as follows:

> In their motion, Defendants point out that State National's story appears to have changed from its Original Complaint to its First Amended Complaint. This is true. In its Original Complaint, State National alleged that there were two distinct attempts to settle the Mackrani Action and which led to a single settlement of $137,500: first there was a negotiation that led to a settlement offer of $125,000 that Defendants initially agreed to but later repudiated and then there was a second negotiation that led to a settlement offer of $137,500. It was this $137,500 offer that was accepted by State National and resulted in the settlement of the Mackrani Action. Based on these allegations and others, the court ruled that State National had not fulfilled all of the *Blue Ridge* requirements after the second negotiation and before it and the Mackranis agreed to settle the Mackrani Action for $137,500. Now, State National alleges that there was only one negotiation, and it led to a settlement of the Mackrani Action for $125,000. Thereafter, because Defendants refused to execute the mutual release of claims, State National and the Mackranis had negotiations unrelated to the Mackrani Action and which resulted in State National paying the Mackranis an additional $12,500.
>
> Defendants argue that this sudden switch in factual allegations demonstrates that State National does not allege plausible claims for reimbursement of the amounts it paid to settle the Mackrani Action.[] While they are correct that courts may, and have, looked to a plaintiff's prior allegations when deciding whether the plaintiff's operative allegations suggest a plausible claims, *see Fasugbe v. Willms*, No. CIV. 2:10-2320 WBS KJN, 2011 WL 2119128 (E.D. Cal. May 26, 2011); *Cole v. Sunnyvale*, No. C-08-05017 RMW, 2010 WL 532428 (N.D. Cal. Feb. 9, 2010) (Whyte, J.), it also is true that "there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations," *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007). One of the reasons for this is that at the outset of a case, a plaintiff may not have all of the facts completely nailed down. As the Ninth Circuit has explained:
>
>> At the time a complaint is filed, the parties are often uncertain about the facts and the law; and yet, prompt filing is encouraged and often required by a statute of limitations, laches, the need to preserve evidence and other such concerns. In recognition of these uncertainties, we do not require complaints to be verified, *see* Fed. R. Civ. P. 11(a), and we allow pleadings in the alternative—even if the alternatives are mutually exclusive. As the litigation progresses, and each party learns more about its case and that of its opponents, some allegations fall by the wayside as legally or factually unsupported. This rarely means that those allegations were brought in bad faith or that the pleading that contained them was a sham. Parties usually abandon claims because, over the passage of time and through diligent work, they have learned more about the available evidence and viable

>
> legal theories, and wish to shape their allegations to conform to these newly discovered realities. We do not call this process sham pleading; we call it litigation.
>
> *Id.* at 858-59. Here, the court believes that, in light of the authority described above, State National's previous allegations do not necessarily render its new allegations implausible such that the court should dismiss its claims at this time.[] It may be that the allegations in State National's First Amended Complaint turn out to be true, or it may not, but that is a matter to be addressed later.
>
> . . .
>
> Defendants also argue that, even the allegations are accepted, State National does not sufficiently allege an agreement. Specifically, Defendants say that "State National merely alleges that Defendants agreed to agree to a settlement of the Mackrani [Action] for $125,000, as well as a release of the Mackranis from any possible future claims by Defendants." Motion to Dismiss FAC, ECF No. 19-1 at 16. What they accepted was "only a proposal," and they "did not accept or sign the yet-drafted separate, final and actual settlement agreement once [they] learned that State National would seek reimbursement against its insureds for any and all of the indemnification amount." *Id.* They say that, "[a]s alleged, the Mediator's Proposal was essentially an agreement merely regarding the fairness of the terms that would need a later agreement written and signed by both the Defendants and the Mackranis at some future date and time." *Id.* at 17.
>
> The court disagrees, at least at this time. State National alleges that Defendants and the Mackranis agreed to the Mediator's Proposal, *see* FAC, ECF No. 17 ¶¶ 19, 20, 21, "which required the parties to (1) agree to a full and final settlement of the [Mackrani Action] for $125,000; and (2) for [D]efendants to mutually release all claims that may have against the Mackranis," *id.*, ECF No. 17 ¶ 17. State National's allegations do not state that the Mediator's Proposal "was essentially an agreement merely regarding the fairness of the terms that would need a later agreement written and signed by both the Defendants and the Mackranis at some future date and time," as Defendants argue. Whether Defendants are correct about that, though, is a matter for summary judgment and/or trial. At this stage, State National's allegations of an agreement are sufficient.

9/13/2013 Order, ECF No. 26 at 10-12 (footnotes omitted).

State National never filed a Second Amended Complaint to reallege its fifth claim for breach of contract, so Defendants answered the operative First Amended Complaint on October 23, 2013. *See* Answer, ECF No. 27. Since then, the parties have engaged in discovery.

## III. THE DEPOSITIONS AT ISSUE

Defendants now want to depose Paul Scheele (the Mackranis' attorney in the Mackrani Action) and Lance Orloff (State National's attorney in both the Mackrani Action and this action) about the facts, circumstances, and terms of the Mackrani Action settlement agreement. *See* Joint Letter, ECF No. 52 at 1. State National objects to Defendants deposing Mr. Scheele to the extent that

Defendants seek information covered by California's so-called "mediation privilege." *Id.* at 2-3. And it objects to its attorney (Ms. Orloff) being deposed at all. *Id.* at 4-5.

The court held a hearing on the matter on May 8, 2014. 5/8/2014 Minute Order, ECF No. 55.

## ANALYSIS

### I. LEGAL STANDARD

Subject to the limitations imposed by subsection (b)(2)(C), under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. However, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

Assuming a party seeks relevant information, that party may depose "any person" under Rule 30(a)(1), and there is no express prohibition against deposing an attorney of record in a case. *See Graff v. Hunt & Henriques,* No. C 08–0908 JF (PVT), 2008 WL 2854517, at *1 (N.D. Cal. July 23, 2008). Still, "[t]he Supreme Court . . . alluded to a presumption that trial counsel should not be forced to testify because doing so compromises the standards of the legal profession." *Nocal, Inc. v. Sabercat Ventures, Inc.,* No. C04–0240, 2004 WL 3174427 (N.D. Cal., Nov. 15, 2004) (citing *Hickman v. Taylor*, 329 U.S. 495, 513 (1947)); *accord Mustang Mktg., Inc. v. Chevron Prods. Co.,* No. SA CV 02–485 DOC (MLGx), 2006 WL 5105559, at *3 (C.D. Cal. Feb. 28, 2006). For this reason, attorney depositions even for fact discovery generally are allowed only when the discovery cannot be obtained from another place. *Graff,* 2008 WL 2854517, at *1 (citing *Shelton v. Am. Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir. 1986)).

The *Shelton* court explained that attorney depositions should be permitted only where the party seeking the deposition shows that (1) no other means exist to obtain the information, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case. 805 F.2d at 1327. District courts in this district and elsewhere in the Ninth Circuit recognize *Shelton* as the leading case on attorney depositions. *See, e.g., S.E.C. v. Jasper*, No. C07-06122 JW (HRL), 2009 WL 1457755 (N.D. Cal. May 26, 2009); *Fausto v. Credigy Servs. Corp.,* No. C07–05658, 2008 WL 4793467 (N.D. Cal., Nov. 3, 2008); *Graff v. Hunt & Henriques,* No. C08–0908, 2008 WL 2854517 (N.D. Cal., July 23, 2008); *Nocal,* 2004 WL 3174427 (N.D. Cal., Nov. 15, 2004); *Massachusetts Mutual Life Ins. Co. v. Cerf,* 177 F.R.D. 472, 479 (N.D. Cal., 1998).

## II. APPLICATION

### A. Defendants May Depose Mr. Scheele

With respect to Mr. Scheele, State National says that it objects to his deposition only to the extent that Defendants seek information protected from disclosure by California's so-called "mediation privilege."[2] *See* Joint Letter, ECF No. 52 at 3 (citing Cal. Evid. Code § 1119; *Cassel v. Superior Court*, 51 Cal. 4th 113, 130 (2011)). It is true that "[i]n California, certain documents and communications pertaining to mediation are generally inadmissible in civil litigation." *Babasa v. LensCrafters, Inc.*, 498 F.3d 972, 974 (9th Cir. 2007) (citing Cal. Evid. Code § 1119). California Evidence Code § 1119 provides in full:

> Except as otherwise provided in this chapter:
>
> (a) No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given.
>
> (b) No writing, as defined in Section 250, that is prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation, is admissible or subject to discovery, and disclosure of the writing shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given.
>
> (c) All communications, negotiations, or settlement discussions by and between

---

[2] As this action is before the court based on diversity jurisdiction, questions regarding the application of privileges are governed by California law. *See* Fed. R. Evid. 501.

> participants in the course of a mediation or a mediation consultation shall remain confidential.

These provisions are strictly construed, *Cassel*, 51 Cal.4th at 118, unless a statement or document falls squarely within an express statutory exception to mediation confidentiality, it will be inadmissible, *Foxgate Homeowners' Ass'n v. Bramalea Cal., Inc.*, 26 Cal. 4th 1, 14 (2001).

But as Defendants point out, California Evidence Code §§ 1123 and 1124 provide two such statutory exceptions for written and oral settlement agreements. Section 1123 says that

> A written settlement agreement prepared in the course of, or pursuant to, a mediation, is not made inadmissible, or protected from disclosure, by provisions of this chapter if the agreement is signed by the settling parties and any of the following conditions are satisfied:
>
> (a) The agreement provides that it is admissible or subject to disclosure, or words to that effect.
>
> (b) The agreement provides that it is enforceable or binding or words to that effect.
>
> (c) All parties to the agreement expressly agree in writing, or orally in accordance with Section 1118, to its disclosure.
>
> (d) The agreement is used to show fraud, duress, or illegality that is relevant to an issue in dispute.

And Section 1124 says that

> An oral agreement made in the course of, or pursuant to, a mediation is not made inadmissible, or protected from disclosure, by the provisions of this chapter if any of the following conditions are satisfied:
>
> (a) The agreement is in accordance with Section 1118.
>
> (b) The agreement is in accordance with subdivisions (a), (b), and (d) of Section 1118, and all parties to the agreement expressly agree, in writing or orally in accordance with Section 1118, to disclosure of the agreement.
>
> (c) The agreement is in accordance with subdivisions (a), (b), and (d) of Section 1118, and the agreement is used to show fraud, duress, or illegality that is relevant to an issue in dispute.

Defendants state that they do not seek information protected by the mediation privilege; instead, they say that they want to learn "only the facts, circumstances, and terms" of the Mackrani Action settlement agreement. Joint Letter, ECF No. 52 at 4. Although State National claims that "the actual settlement" of the Mackrani Action "is not in dispute," *id.* at 3, Defendants beg to differ, *see id.* at 3-4. Defendants say that they have been unable to obtain evidence showing "how the [Mackrani Action] resolved, what the actual terms were, who agreed to such terms, how the

C 13-00433 LB
ORDER                                             10

agreement was made, the amount of the settlement payments, [or] to whom they were made or when the payments were made and/or deposited." *Id.* at 4. This is why Defendants "seek to depose the only two witnesses from [the Mackrani Action who] have knowledge" of those facts: Mr. Scheele and Mr. Orloff. *Id.*

Defendants' request makes further sense in light of the allegations made in the two complaints State National filed. As the court recounted above, in its Original Complaint, State National alleged that there was a single settlement for $137,500, but in its First Amended Complaint, it alleged that there were two settlements: one for $125,000 and another for $12,500. This change in theories allowed State National's third and fourth claims to survive past the motion to dismiss stage, and the court noted that arguments surrounding the terms of the settlement would be properly addressed at summary judgment. It would be inappropriate to now prevent Defendants from learning the facts about the settlement agreement that they need to challenge State National's claims at summary judgment.

On this record, the court finds that Defendants have shown that (1) there does not appear to another way to learn about the settlement agreement that to depose Mr. Scheele, (2) the facts, circumstances, and terms of the settlement agreement (as opposed to those about the mediation itself, which are privileged) are relevant; and (3) this information is crucial to Defendants' preparation of this case. *See Shelton*, 805 F.2d at 1327. Accordingly, the court will allow Defendants to depose Mr. Scheele about the facts, circumstances, and terms of the Mackrani Action settlement agreement (or agreements). It is the court's view that Defendants' desire to know when the mediation ended, and thus when the mediation privilege no longer applied, is a legitimate one that is not precluded by the mediation privilege. If the parties run into problems surrounding further application of the mediation privilege, they shall do their best to resolve them. If they cannot, they may file another discovery letter brief that argues about the application of the mediation privilege to specific information sought by Defendants.

**B. If Necessary, Defendants May Depose Mr. Orloff After They Depose Mr. Scheele**

As for Mr. Orloff, State National again argues that the terms of the Mackrani Action settlement agreement are not in dispute, *see* Joint Letter, ECF No. 52 at 5, but as the court stated above, this

does not appear to be accurate. The information is relevant. State National also argues that allowing Mr. Orloff to be deposed presents a risk that privileged information is disclosed, *see id.* at 4-5, but Defendants state that they seek to depose him only as a fact witness and seek only information about the facts, circumstances, and terms of the Mackrani Action settlement agreement; they do not seek information protected by California's mediation privilege, *see* id. at 5-6. In addition, State National argues that, if Defendants are allowed to depose Mr. Scheele, Mr. Orloff's deposition will be duplicative, because Defendants will learn everything they need to know about the settlement agreement from Mr. Scheele. *See id.* As a compromise, Defendants offer to wait and see if Mr. Scheele's deposition yields enough information such that Mr. Orloff's deposition is not necessary, but Defendants rightfully are not willing to agree to not depose Mr. Orloff at all. *See id.* at 6. After all, there is no guarantee that Mr. Scheele's and Mr. Orloff's testimony will corroborate. *See id.* at 5.

On this record, the court again finds that (1) there does not appear to another way to learn about the settlement agreement that to depose Mr. Orloff (unless Mr. Scheele's testimony turns out to be sufficient), (2) the facts, circumstances, and terms of the settlement agreement (as opposed to those about the mediation itself, which are privileged) are relevant; and (3) this information is crucial to Defendants' preparation of this case. *See Shelton*, 805 F.2d at 1327. Accordingly, the court will allow Defendants to depose Mr. Orloff about the facts, circumstances, and terms of the Mackrani Action settlement agreement (or agreements), but Defendants may do so only if Mr. Scheele's testimony is not sufficient on its own.

**CONCLUSION**

The court will allow Defendants to depose Mr. Scheele and Mr. Orloff about the facts, circumstances, and terms of the Mackrani Action settlement agreement (or agreements), subject to the restrictions stated above. Each deposition shall be done via video conferencing (unless the parties agree otherwise) and shall take no longer than 1.5 hours.

This disposes of ECF No. 52.

**IT IS SO ORDERED.**

1 | Dated: May 9, 2014

_____
LAUREL BEELER
United States Magistrate Judge